UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID MARK LANE,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

No. 1:17-CV-03008-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF

Nos. 13 & 17. Mr. Lane brings this action seeking judicial review, pursuant to 42

U.S.C. § 405(g), of the Commissioner's final decision, which denied his

application for Disability Insurance Benefits under Title II and his application for

Supplemental Security Income under Title XVI of the Social Security Act, 42

U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and

briefs filed by the parties, the Court is now fully informed. For the reasons set forth

below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Mr. Lane's Motion for Summary Judgment.

## I.    Jurisdiction

Mr. Lane filed his applications for Supplemental Security Income and Disability Insurance Benefits on August 31, 2011. AR 15, 195, 346-58. His alleged onset date of disability is May 5, 2011. AR 15, 195, 356, 353. Mr. Lane's applications were initially denied on February 14, 2012, AR 223-38, and on reconsideration on March 29, 2012, AR 241-52.

A hearing with Administrative Law Judge ("ALJ") Larry Kennedy occurred on April 23, 2013. AR 36-88. On August 27, 2013, the ALJ issued a decision finding Mr. Lane ineligible for disability benefits. AR 195-211. The Appeals Council remanded the case back to the ALJ on April 17, 2015, so the ALJ could view the new evidence submitted to the Appeals Council that indicated the impairments might be more limiting. AR 217-20.

A subsequent hearing with the ALJ occurred on September 21, 2015. AR 89-127. On February 10, 2016, the ALJ issued a second decision, incorporating the first decision, finding Mr. Lane ineligible for disability benefits prior to July 12, 2014, and finding that Mr. Lane became disabled on July 12, 2014. AR 15-24. The Appeals Council denied Mr. Lane's request for review on November 10, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Lane timely filed the present action challenging the denial of benefits, on January 11, 2017. ECF No. 3. Accordingly, Mr. Lane's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

*Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Mr. Lane was 48 years old on the date the applications were filed. AR 346, 353. He has at least a high school education and is able to communicate in English. 22, 210. Mr. Lane has past relevant work as a carpenter and construction laborer. AR 21, 197.

## V.    The ALJ's Findings

The ALJ determined that Mr. Lane was not under a disability within the meaning of the Act from May 5, 2011, the alleged onset date, and prior to July 12, 2014, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. AR 15-16, 24.

**At step one**, the ALJ found that Mr. Lane had not engaged in substantial gainful activity since May 5, 2011 (citing 20 C.F.R. §§ 404.1571 *et seq*., and 416.971 *et seq*.). AR 16.

**At step two**, the ALJ found Mr. Lane had the following severe impairments: Crohn's disease with pain, history of ileocecectomy, status post left inguinal hernia repair, and obesity (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 17.

At **step three**, the ALJ found that Mr. Lane did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 18-19.

**At step four**, the ALJ found, prior to July 12, 2014, Mr. Lane had the residual functional capacity to perform light work, including: he could lift up to 20 pounds occasionally and lift and/or carry up to 10 pounds frequently; He could stand and/or walk for about six hours in an eight-hour workday with normal breaks; he could sit for about six hours in an eight-hour workday with normal breaks; he could occasionally reach overhead and frequently reach below shoulder level; he could frequently handle and finger but he had to avoid repetitive forceful gripping, grasping, and turning; he could occasionally balance, stoop, kneel, and crouch; he could never crawl or climb ladders, ropes, scaffolds, ramps, or stairs; he had to avoid concentrated exposure to extreme cold, heat, and vibration; he had to have reasonable access to a restroom facility; he could understand, remember, and carry out simple and detailed instructions; and he could make judgments on simple and detailed work-related decisions, that is, he could do unskilled and some semiskilled work. AR 19.

The ALJ found, since July 12, 2014, Mr. Lane has the residual functional capacity to perform light work, including: he can lift up to 20 pounds occasionally and lift and/or carry up to 10 pounds frequently; he can stand and/or walk for about six hours in an eight-hour workday with normal breaks; he can sit for about six hours in an eight-hour workday with normal breaks; he can occasionally reach overhead and frequently reach below shoulder level; he can frequently handle and

finger but he has to avoid repetitive forceful gripping, grasping, and turning; he can occasionally balance, stoop, kneel, and crouch; he can never crawl or climb ladders, ropes, scaffolds, ramps, or stairs; he has to avoid concentrated exposure to extreme cold, heat, and vibration; he has to have reasonable access to a restroom facility, that is, the restroom must be in proximity to the workspace; he can understand, remember, and carry out simple and detailed instructions; he can make judgments on simple and detailed work-related decisions, that is, he can do unskilled and some semiskilled work; and he is unable to maintain regular attendance and be punctual within customary tolerances. AR 21.

The ALJ determined that Mr. Lane has been unable to perform any past relevant work since May 5, 2011. AR 21.

**At step five**, the ALJ found, prior to July 12, 2014, in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. AR 22. These include, housekeeping cleaner, cashier II, and fast food worker. AR 22-23.

However, the ALJ found, beginning on July 12, 2014, in light of his age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that he can perform. AR 23.

The ALJ found Mr. Lane was not disabled prior to July 12, 2014, but he became disabled on that date.

## VI.  Issues for Review

Mr. Lane argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly discrediting Mr. Lane's subjective complaint testimony; (2) improperly evaluating the medical opinion evidence; (3) improperly evaluating the lay witness evidence; and (4) failing to call a medical expert to infer the onset date of disability.

## VII.  Discussion

### A. The ALJ Properly Discounted Mr. Lane's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Lane alleges; however, the ALJ determined that Mr. Lane's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 20-21, 206. The ALJ provided multiple clear and convincing reasons for discrediting Mr. Lane's subjective complaint testimony. AR 20, 206-05.

Although Mr. Lane argues that the ALJ failed to properly discredit his subjective complaint testimony regarding his allegations, the ALJ provided multiple reasons for discounting Mr. Lane's subjective complaints that are supported by the record.

The ALJ detailed many very important instances of inconsistent statements and lack of truthfulness. The ALJ noted that Mr. Lane lied to his doctor at his treatment clinic regarding his misuse of prescription drugs, which led to Mr. Lane being discharged from the clinic. AR 20, 207. An ALJ may weigh a claimant's

inconsistent statements about their drug use against the credibility of their allegations. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Mr. Lane went to his treatment clinic for a morphine refill, the doctor noted that he "recently got a urine drug screen back for [Mr. Lane], which showed no morphine in his system at all and a very, very high level of methadone in his system which [Mr. Lane] is not prescribed." AR 1113. Mr. Lane "denied knowledge of ever taking any form of methadone and stated that one time he had an allergic reaction and asked his mother for Benadryl and he is wondering if the Benadryl that his mother gave him might have actually been methadone." *Id*. After the doctor told Mr. Lane that he would not be prescribed further narcotics, Mr. Lane "stated that the real story was that he ran out of his medication and he was very sick and instead of call[ing] [the clinic] and let us know, he just decided to take somebody else's methadone." *Id*. The clinic then discharged Mr. Lane because "he not only had aberrant behavior by having the wrong medication in his system but then continu[ed] to lie about it through the course of the visit." *Id*. Untruthfulness about substance abuse is a clear and convincing reason to reject a claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Additionally, the ALJ noted that Mr. Lane "held himself out as able and available to work for the purposes of obtaining unemployment benefits during the

same period he alleged [total] disability in connection with his Social Security claim." AR 20, 207. Mr. Lane certified, weekly, to the State of Washington that he was ready, able and willing to work. AR 208. These claims directly conflict with his allegations of complete disability during the same time period. An ALJ may rely on ordinary techniques of credibility evaluation such as prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039. "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime" when a claimant has held herself out as available for full-time work. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008).

The ALJ also noted other instances of inconsistent statements. AR 20, 206. In February 2012, Mr. Lane told a medical provider that his "hands stopped swelling." AR 1120. That same month, Plaintiff reported to the Commissioner through his representative that his "hands swell and fall asleep throughout the day" and that the condition was "[g]radually worsening." AR. 719. The ALJ reasonably weighed these inconsistent statements in determining Mr. Lane's credibility. An ALJ may consider inconsistencies in a claimant's statements when weighing his credibility. *Thomas*, 278 F.3d at 958-59.

The ALJ also noted a failure to follow treatment recommendations. If a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment this is "powerful evidence" regarding the extent to

which they are limited by the impairment. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). While smoking can be difficult to quit, Mr. Lane's doctor's continually recommended he do so. In 2011, shortly after he alleged that he became disabled, a doctor talked to Mr. Lane about "cessation of smoking as that would definitely help his GI tract," which was his primary impediment to working. AR 997. More than a year later, though, Mr. Lane was again "strongly encouraged" by his treating doctor to quit smoking, "as this can worsen his underlying Crohn's disease." AR 1168. The following year, Plaintiff was still smoking a pack of cigarettes every day. AR 207, 1210.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Mr. Lane's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

\\

\\

### B. The ALJ Properly Evaluated the Medical Opinion Evidence.

#### a. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than

his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. Scott Lee, M.D.

Dr. Lee is a treating physician who provided assessments of Mr. Lane in December 2013, and August 2015. AR 20-21. Mr. Lane contests the weight the ALJ afforded to the earlier, December 2013, assessment in which Dr. Lee opined that Mr. Lane's impairments made him unable to "obtain much less sustain consistent employment." AR 20, 1236-37.

The ALJ did not completely discount Dr. Lee's December 2013 opinion, but assigned it little weight. AR 20. The ALJ discounted Dr. Lee's opinion for multiple valid reasons. First, the ALJ noted that the short opinion is inconsistent with the treatment record showing that Mr. Lane's condition was adequately managed until he was hospitalized in July 2014. AR 20. The medical record notes that Mr. Lane was "doing fine" until shortly before he reported to the emergency room on July 12, 2014, when Mr. Lane had started to have abdominal pain days before his hospital admission. AR 1383. Although Mr. Lane reported chronic pain related to his Crohn's disease, he had no tenderness in his abdomen and physical examinations were routinely normal other than some swelling in his hands prior to his July 2014 hospitalization. AR 1243, 1245, 1253, 1255, 1257, 1260, 1262, 1264, 1266, 1281. An ALJ may reject a doctor's opinion when it is inconsistent with

other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Second, the ALJ found that Dr. Lee's opinion is directly inconsistent with Mr. Lane's own reports to the State of Washington that he was ready, able, and available to work. AR 20. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (an ALJ may give less weight to a medical opinion that conflicts with the claimant's own assessment of his impairments).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Lee's opinions.

\\

\\

### c. Dr. Anita Afzali, M.D., M.P.H.

Dr. Afzali treated Mr. Lane from August to September 2012, and provided a letter on behalf of Mr. Lane in December 2012. AR 1234-35. In the letter, Dr. Afzali opined, in total, that Mr. Lane was "unable to perform material and substantial duties of any occupation." *Id*.

The ALJ did not completely discount Dr. Afzali's opinion, but assigned the opinion little weight. AR 209-10. The ALJ discounted Dr. Afzali's opinion because of inconsistencies between the opinion and the medical record. *Id*. In particular, the ALJ noted that Dr. Afzali stated that Mr. Lane "remains off all therapy for his disease since no current medical treatments have been successful." AR 1234. However, the record is clear that treatment of Mr. Lane's condition with Humira was successful but that it was Mr. Lane's "financial constraints," rather than the failure of any treatments, that left him "unable to receive any further medications for management of his Crohn's disease." AR 210, 1165, 1172. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d 595, 602-603 (9th Cir. 1999).

Additionally, the ALJ noted that the severity of Mr. Lane's symptoms, as noted by Dr. Afzali, existed for at least two years prior, during which time Mr. Lane was able to engage in substantial gainful activity. AR 210. Dr. Afzali opined that Mr. Lane's impairments were disabling at the same time during which Mr.

Lane was able to perform substantial gainful activity. An ALJ may reasonably

discount a medical opinion describing longstanding limitations that have not been

disabling in the past. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An

ALJ may properly reject an opinion that provides restrictions that appear

inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856.

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of

Dr. Afzali's opinion.

### d. Dr. Timothy Brown, M.D.

Dr. Brown wrote a letter on Mr. Lane's behalf in April 2012. AR 1112. In

the letter, Dr. Brown notes that Mr. Lane has a history of Crohn's disease,

underwent surgery in 2012, requires ongoing treatment, and there does not appear

to be a short term solution for Mr. Lane's pain and bowel function. *Id*. Dr. Brown

opined that "it is difficult for [Mr. Lane] to undertake any sustained activities

which include painful and plan (sic)" and "[d]isability may be necessary." *Id*.

Mr. Lane argues that the ALJ erred by not addressing the opinion from Dr. Brown, thus the opinion must be credited and as true and this case must be remanded for an award of benefits.

The ALJ did not commit harmful error by not specifically addressing the letter provided from Dr. Brown. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss every piece of evidence submitted; rather, he must only explain why significant probative evidence has been rejected). The letter signed by Dr. Brown is extremely brief, it consists of only seven sentences, and provides the opinion that it is difficult for Mr. Lane to undertake sustained activities and that disability may be necessary. AR 1112. There is no indication that this opinion has been rejected.

The ALJ did not reject the opinion that it was difficult for Mr. Lane to undertake sustained activities. On the contrary, the ALJ found that Mr. Lane's impairments did indeed make activities difficult and provided numerous significant work-related limitations in assessing Mr. Lanes residual functional capacity. Dr. Brown's opinion that disability may be necessary does not mean that Mr. Lane was indeed disabled, and was also not rejected; but rather, is consistent with the entire process the ALJ follows in order to determine if disability is actually necessary.

The Court finds that Dr. Brown's opinion does not constitute significant probative evidence that was rejected by the ALJ, thus the ALJ did not harmfully err by failing to specifically address Dr. Brown's opinion.

### e. Dr. Jesse McClelland, M.D.

Dr. McClelland is an examining psychiatrist who provided an opinion in November 2011. AR 1028-33. Dr. McClelland opined that Mr. Lane should be able to perform simple and repetitive tasks, he may struggle with detailed and complex tasks, his cognitive problems may cause him to have difficulty accepting instructions from supervisors, he may struggle to maintain regular attendance in the workplace, he may have interruptions during the day from panic attacks and being too anxious or too depressed, he would likely struggle with the usual workplace, and he has poor coping skills and does not do well with stress or change. *Id*. Dr. McClelland also opined that Mr. Lane's problems are treatable. AR 1032.

The ALJ did not completely discount Dr. McClelland's opinions, but assigned them little weight. AR 209. The ALJ discounted the opinions because Dr. McClelland met with Mr. Lane only once, during which time Mr. Lane interacted and performed well with Dr. McClelland, and because the longitudinal record does not support the severity of symptoms opined by Dr. McClelland, the limitations are

inconsistent with Mr. Lane's work history, and with medication management the mental impairments are non-severe. *Id*.

The ALJ detailed numerous records that contradict Dr. McClelland's assessment. AR 18, 201-02, 209. The medical records contain frequent normal mental status examinations, he was alert and oriented with normal mood, affect, and memory, and Mr. Lane's own admission that he was "doing well" on medication. AR 1024-26, 1075-79, 1136-41, 1209-33, 1242, 1248, 1250, 1253, 1255, 1257, 1259, 1262, 1264, 1266, 1268, 1270, 1281, 1285, 1287. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. Additionally, although Mr. Lane told Dr. McClelland that he had always had difficulty focusing, he was nevertheless able to sustain substantial gainful activity despite these problems. AR 209. An ALJ may reasonably discount a medical opinion describing longstanding limitations that have not been disabling in the past. *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. McClelland's opinions.

**C. The ALJ Properly Evaluated the Lay Witness Opinion.**

The opinion testimony of Mr. Lane's former co-worker, Fray Dodson, falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

On April 24, 2012, a letter was submitted to the electronic file from Mr. Dodson. AR 734. Mr. Dodson stated that he had worked with Mr. Lane on several jobs from the 1980s to 2001, and briefly described difficulties Mr. Lane had performing construction work due to his Crohn's disease. *Id*. The ALJ gave little weight to Mr. Dodson's statements because he had not worked with Mr. Lane since 2001, a decade prior to the alleged onset date and applications for disability. AR

208. There is no statement or description of any interaction with Mr. Lane or difficulties faced by Mr. Lane during the relevant period that began in 2011. The degree of contact a lay witness has with the claimant is relevant in determining the weight to be attributed to their statements. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1995).

The Court finds the ALJ properly provided a germane reason for not fully crediting Mr. Dodson's letter.

**D. The ALJ did not err by not calling a medical expert to infer the onset date of disability.**

The ALJ found Mr. Lane disabled beginning on July 12, 2014. Mr. Lane briefly argues the ALJ failed to meet his duty by not calling a medical expert to opine as to when disability began.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); see also 20 C.F.R. § 404.1519a. "[W]here a record is ambiguous

as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." *Armstrong v. Comm'r of the SSA*, 160 F.3d 587, 590 (9th Cir. 1998). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288; *Armstrong*, 160 F.3d at 590. Importantly, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.

The ALJ did not err by not calling a medical expert to infer an onset date of disability. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Substantial evidence supported the ALJ's decision that Mr. Lane was not disabled prior to July 12, 2014. The record demonstrates that Mr. Lane "doing fine" until just before July 12, 2014, when Mr. Lane started to have abdominal pain" that was "progressively getting worse" and he went to the emergency room. AR 1383. Accordingly, the ALJ's duty to call a medical expert to assist in determining the onset date was not triggered, and the ALJ did not err.

\\

\\

# VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 17,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 4th day of April, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge